AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)      ☐ Original   ☐ Duplicate Original

| LODGED |
| CLERK, U.S. DISTRICT COURT |
| 01/25/2021 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: ____DM____ DEPUTY |

# UNITED STATES DISTRICT COURT

for the

Central District of California

| FILED |
| CLERK, U.S. DISTRICT COURT |
| 01/25/2021 |
| CENTRAL DISTRICT OF CALIFORNIA |
| BY: ____KL____ DEPUTY |

United States of America

v.

GILBERT BAILEY,
TEVAUGHN BROWN, and
TERRANCE PEARSON

_____Defendants_____

Case No.  2:21-mj-00414

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about October 25, 2019, within the county of Los Angeles in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Interference with Commerce by Robbery |
| 18 U.S.C §§ 924(c)(i), (ii), (iii), 2(a) | Aiding and Abetting the Use and Carry of a Firearm During and In Relation to a Crime of Violence, Possession of a Firearm in Furtherance of a Crime of Violence, Brandishing a Firearm in Furtherance and During a Crime of Violence, and Discharging a Firearm in Furtherance and During a Crime of Violence |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

_____/s/_____
*Complainant's signature*

Daniel Ament, FBI Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:  ____January 25, 2021____          _____*Alicia G. Rosenberg*_____
*Judge's signature*

City and state:  Los Angeles, California       Hon. Alicia G. Rosenberg, U.S. Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

I, Daniel Ament, being duly sworn, declare and state as follows:

## I.    INTRODUCTION

1.    I am a peace officer for the Los Angeles County
Sheriff's Department ("LASD"), and have been so employed since
2006.  I am currently a sworn Task Force Officer ("TFO") for the
joint Federal Bureau of Investigations/Los Angeles County
Sheriff's Department Los Angeles Metropolitan Violent Crime Task
Force.

2.    I have received training in the Los Angeles County
Sheriff's Department Academy, Jail Operations, Patrol School,
and Investigator Training relating to crimes and investigations
associated with firearms, robberies, assaults, and street gangs.
I have attended a forty-hour training class regarding the
cellular telephone network, records, and mapping.

3.    I have been assigned to primarily investigate
robberies since 2011.  During those investigations, I have used
a variety of investigative techniques, including victim, witness
and suspect interviews, examining physical evidence, and
reviewing surveillance videos, cellular telephone data and
social media accounts.  As a result of this experience and my
conversations with other law enforcement personnel, to include
FBI Special Agents and other LASD Detectives experienced with
commercial robbery investigations, I am familiar with the
methods used by individuals to commit commercial robberies as
well as effective investigative methods to solve them.

1

## II.   **PURPOSE OF AFFIDAVIT**

4.     This affidavit is made in support of a criminal complaint against GILBERT BAILEY ("BAILEY"), TEVAUGHN BROWN ("BROWN"), and TERRANCE PEARSON ("PEARSON") for a violation of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery) and 18 U.S.C. §§ 924(c)(1)(i), (ii), (iii), 2(a) (Aiding and Abetting the Use and Carry of a Firearm During and In Relation to a Crime of Violence, Possession of a Firearm in Furtherance of a Crime of Violence, Brandishing a Firearm in Furtherance and During a Crime of Violence, and Discharging a Firearm in Furtherance and During a Crime of Violence).

5.     The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel, victims, witnesses, cellular telephone data, surveillance footage, deoxyribonucleic acid ("DNA") evidence, and other evidence.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## III. **SUMMARY OF PROBABLE CAUSE**

6.     From July 23, 2019, to May 3, 2020, a series of at least three commercial robberies were committed by a group of individuals who appeared to use a firearm in furtherance of these robberies.  Law enforcement believes these three robberies

2

are connected, with common suspects and tactics.  I am the
detective assigned to investigate these three robberies.

7.    As detailed below, BAILEY, BROWN, and PEARSON, among
others, participated in the commercial robbery charged in this
complaint, namely an October 25, 2019 of a Party City in
Palmdale, California.  During the course of this robbery, the
robbers obtained $10,000 from Party City, and discharged a
firearm.

8.    At his post-arrest interview, BAILEY admitted his
involvement in the Party City Robbery, including that he
provided the real handgun to a co-conspirator to use at the
robbery and that the handgun was never returned to him following
the robbery.

9.    Law enforcement searched the path of travel of the
robbery suspects who fled from the Party City.  Near their
suspected escape routes, law enforcement found clothing and a
firearm which matched the items used by the robbers in the
surveillance footage.  Law enforcement conducted a DNA
examination on the clothing and firearm.  The DNA results on the
clothing found DNA consistent with BAILEY, BROWN, and PEARSON's
DNA on some of the recovered clothing items.  The DNA results
from the firearm found DNA consistent with BROWN's (primary
contributor) and BAILEY's (minor contributor) DNA.

## IV.   PROBABLE CAUSE

### A.   The Robbery at Party City on October 25, 2019

#### 1.   The Robbery

10.   On October 25, 2019, at approximately 5:50 a.m., witnesses describe, and surveillance footage subsequently showed, that multiple robbers, at least one of which was armed with a loaded firearm, entered and robbed a Party City in Palmdale, California located at 39451 10th Street West.

11.   During the course of the investigation, I interviewed victims, witnesses and suspects, collected and reviewed surveillance video from multiple cameras, collected and examined physical evidence, spoke to other law enforcement officers, and reviewed cellular telephone data related to the robbery at Party City in Palmdale, California.  Based on this, I am aware of the following, in part:

*a. Before the Robbery*

12.   At approximately 5:32 a.m. a light-colored Nissan Maxima (the "Nissan") with collision damage on the passenger side door entered the shopping center were Party City is located.  The Nissan parked in the northeast side of the parking lot, facing south toward the front of Party City.

a.   According to DMV records, BAILEY is the registered owner of a gray Nissan Maxima.  In a later traffic stop on BAILEY's Nissan Maxima, BAILEY was driving and law enforcement saw the passenger side door had collision damage consistent with the Nissan used in the Party City robbery.

13.  At approximately 5:47 a.m. employee D.C. arrived at the shopping center, in what he later told LASD deputies was a ride share vehicle.  D.C. got out of the rear passenger side of the car, which dropped him off in the northeast corner of the parking lot, near the Nissan.  According to google maps, Party City appears to be located on the west side of the parking lot.

14.  As D.C. walked southwest through the parking lot toward Party City, he passed by the Nissan.  Two suspects got out of the Nissan and followed behind him.

15.  As D.C. approached the front doors, a third suspect got out of another car, a dark colored 4-door sedan, which was parked closer to Party City.

16.  Based on my review of DMV records, BAILEY is the registered owner of a gray Nissan Maxima and a blue Honda Accord, which are consistent with both vehicles.

17.  Based on later recovered evidence, including DNA evidence, and phone records, law enforcement believes that these three robbers were BROWN, BAILEY, and PEARSON.

18.  At approximately 5:49 a.m., D.C. arrived at the front sliding glass doors of the Party City and began knocking on the door.

*b. Party City Robbery*

19.  At approximately 5:50 a.m., an employee unlocked the front doors to allow D.C. inside.  As D.C. entered, D.C. paused in the doorway and appeared to place his left forearm on the side of the sliding doors, pushing them further apart.  After

D.C. entered, three masked robbers rushed from behind D.C., pushing D.C. and another employee to the ground, and continued to run to the back of the store.

20. Two employees and D.C. left the store through the sliding front door.  One of the employees closed the sliding front doors and locked them from the outside.

21. Two of the robbers entered the rear office.  One robber appeared to be holding a black semi-automatic handgun in one hand.  Another robber collected money and placed it into a black duffle bag.

22. At approximately 5:51 a.m., two of the robbers, later identified as BROWN and PEARSON, returned to the front doors and attempted to exit, but quickly discovered the sliding glass doors were locked.  The robbers attempted to push, kick and ram the doors open with a shopping cart, however the door remained closed.  One of the robbers produced a black semi-automatic handgun from his waist band and fired a round at the door, shattering the glass.  The two robbers escaped through the broken door and ran northeast through the parking lot.

23. At approximately 5:53 a.m., the third robber with the duffle bag containing the stolen money approached the broken front door.  The robber was holding his left hand to the left side of his face and appeared to be using a cellphone.  The robber then went back into the store and is believed to have exited from a different door.

### 2.   Subsequent Investigation

24.   The employee victims described the suspects as all men.  Party City stated that they lost approximately $10,000 in cash during the robbery, and the doors would cost approximately $1,000 to fix.

25.   Based on my comparison of the surveillance footage, the robber which BAILEY later admitted was him, appeared to be wearing similar clothing to a suspect from another robbery at A.V. Jewelry.  These similarly clothed robbers were wearing a black hooded sweatshirt, gray sweatpants with a torn right rear pocket, and dark Nike shoes with a white logo.

26.   LASD deputies, who responded to the Party City robbery, canvassed the area and located clothing and a stolen black Sig Sauer semi-automatic handgun which had been discarded near neighboring businesses.  The items matched clothing worn by the suspects and the handgun appeared to be the same handgun used during the robbery as captured by surveillance video.

### 3.   DNA Evidence

27.   The clothing and handgun recovered near the scene of the robbery at Party City were examined for DNA.  During the examination, DNA samples were obtained from the clothing and handgun found near Party City and were submitted to be compared against the Combined DNA Index System ("CODIS").  The comparison with the CODIS system resulted in DNA hits for BAILEY, BROWN, and PEARSON's DNA on some of the recovered items.

28.   PEARSON's DNA CODIS hit was as a majority contributor from a "California Republic" baseball hat found near the scene

of the robbery, and seen being worn by one of the robbers.
BAILEY's DNA CODIS hit was as a minority contributor from the
trigger of the firearm.  BROWN's DNA CODIS hit was as a majority
contributor from a sweatshirt found near the scene of the
robbery.  BROWN's submitted DNA profile was the same DNA profile
as the majority contributor from the trigger of the firearm.

29.  A DNA reference sample was obtained from BAILEY and
BROWN[1] following their arrest, pursuant to a state search
warrant.  The two DNA reference samples were submitted to the
LASD crime lab for comparison to the DNA samples obtained from
the items.  The examination yielded the following results:[2]

a.   Gray "Goodfellow & Co" zip up hooded
     sweatshirt: BAILEY (11% contributor)

b.   Black ski mask: BROWN (21% contributor), BAILEY
     (16% contributor)

c.   Black "Amongst Others" pull over hooded
     sweatshirt: BROWN (98% contributor)

d.   Black left glove: BROWN (97% contributor)

e.   Black do-rag: BROWN (98% contributor)

f.   Black cut off t-shirt sleeve: BROWN (88%

---

[1] Law enforcement investigating this matter arrested BAILEY
and BROWN and obtained DNA samples pursuant to a state warrant.

PEARSON has not yet been located, so law enforcement has
been unable to obtain a DNA sample from him to confirm the CODIS
DNA results.  Once PEARSON is located and arrested, law
enforcement intends to obtain a warrant for a confirmatory DNA
sample from PEARSON.

[2] The results for PEARSON's DNA will not show up in the LASD
DNA confirmation examination until law enforcement obtains and
submits a confirmatory DNA sample from PEARSON.

contributor)

g. Black cut off t-shirt sleeve: BROWN (98% contributor)

h. Black "Diesel" glove: BROWN (96% contributor)

i. Trigger and trigger guard of Sig Sauer pistol: BROWN (89% contributor), BAILEY (10% contributor)

j. Grip of Sig Sauer pistol: BROWN (98% contributor)

k. Slide and fame of Sig Sauer pistol: BROWN (97% contributor), BAILEY (2% contributor)

4. <u>Telephone Evidence</u>

30. State search warrants were authored for historical cell records for telephone numbers that were in communication with each other who were in communication around the time of the robbery and were in the vicinity of the robbery.

a. *BAILEY's -7108 Number*

31. BAILEY identified a phone number ending in -7108 ("BAILEY's -7108 Number") as his telephone to law enforcement in his post-arrest interview.[3]  Cell phone records indicate on October 25, 2019 (i.e., the morning of the Party City robbery describe above) this phone was using a cellular tower located at 39398 Willowvale Road, Palmdale, CA, in proximity to the robbery, between 5:32 a.m. and 5:47 a.m.  BAILEY's -7108 number called a phone number ending in -8118 ("K.W.'s -8118 Number") at

---

[3] BAILEY's -7108 Number was registered to a woman who previously shared an address with BAILEY.

5:32 a.m. and 5:47 a.m. and received a call from K.W.'s -8118
number at 5:40 a.m.

       *b.   K.W.'s -8118 Number*

    32.   According to phone records, K.W.'s -8118 Number was
registered to K.W.  Cellphone records state that the cellphone
was using a cellular tower located at 39398 Willowvale Road,
Palmdale, CA, in proximity to the robbery, on October 25, 2019
between 5:13 a.m. and 5:47 a.m., and at 1124 West Rancho Vista
Blvd., Palmdale, also within the proximity of the robbery, at
approximately 5:53 a.m.  Among other phone calls at around this
time, K.W.'s -8118 Number was in communication with
BAILEY's -7108 Number just prior to the robbery and received a
call from a number ending in -7960 ("PEARSON's -7960 Number") at
5:53 a.m., just after the robbery concluded.

       *c.   PEARSON's -7960 Number*

    33.   PEARSON's -7960 Number did not have a registered
owner.  However, the California Department of Corrections
("CDCR") and Rehabilitation parole records listed
PEARSON's -7960 Number as PEARSON's phone number.

    34.   AT&T's historical precision location information
estimates that just before and after the robbery, at 5:39 a.m.
and 5:53 a.m., PEARSON's -7960 Number's device was likely within
50-100 meters of 39460 11th St West, Palmdale, which abuts the
back of the Party City store.

    35.   At about the same time at 5:54 a.m., PEARSON's cell
tower records indicate that PEARSON's -7960 Number was both
using a cellular tower located at 35635 Vista View Terrace,

Palmdale, which is located in the hills approximately 4.7 miles south of the robbery, and simultaneously a tower at 39702 30th Street West, Palmdale, which is approximately 2 miles west of the robbery.  Approximately 9 minutes later, PEARSON's phone was using a cellular tower at approximately 906 East Avenue R, Palmdale, approximately 2.8 miles south-east of the robbery.

36.  Because PEARSON's cell tower hits surround the Party City, and the historical precision location is almost exactly at Party City, I believe in aggregate there is ample phone location evidence that PEARSON's -7960 Number was in the vicinity of the Party City during the robbery.

37.  On October 25, 2019, PEARSON's -7960 Number contacted a number ending in -0492 ("BROWN's -0492 Number") at 6:03 a.m., 6:04 a.m. (twice), and 6:17 a.m., just after the robbery.  Additionally, PEARSON's -7960 Number was in contact with K.W.'s -8118 Number at 3:33 a.m., and 5:54 a.m.

> d.   BROWN's -0492 Number

38.  Based on Los Angeles County Inmate Visitation records, BROWN's -0492 Number was used by BROWN.  Specifically, on an inmate visitation log, BROWN provided this phone number.[4]  The account was also later transferred into BROWN's name on June 18, 2020.

39.  According to DMV records, BROWN lives in south Los Angeles County.

---

[4] Around the time of the robbery, BROWNS's -0492 Number was registered to a woman who shared an address with BROWN.

40.   According to BROWN's -0492 Number records, on October 25, 2019 at approximately 4:50 a.m., the device traveled from south Los Angeles County and arrived in Lancaster.  The device returned to south Los Angeles County at approximately 3:48 p.m. on the same day.

41.   The device did not log any cellular tower location during the robbery or for approximately 2 hours afterwards. However, on the morning of the robbery, BROWN's -0492 Number received calls (that were forwarded to voicemail) from PEARSON's -7960 Number four times between 6:03 a.m. and 6:17 a.m., and from K.W.'s -8118 Number at 6:29 a.m. and 6:41 a.m.  The lack of cell tower data and calls being forwarded to voicemail is consistent with the phone being powered off.

42.   The next tower ping after the robbery put the BROWN's -0492 Number's location in Lancaster at 8:54 a.m.

5.   BAILEY's Arrest

43.   A state arrest warrant was obtained for BAILEY on October 22, 2020.  On October 28, 2020, BAILEY was located driving a gray Nissan Maxima.  He was stopped and arrested in Los Angeles.

44.   BAILEY's Nissan Maxima had collision damage on the passenger side, which matched the collision damage seen on the video camera footage of the car used in the Party City robbery. Law enforcement searched the Nissan Maxima and located, among other things, a loaded black Glock 9MM, semi-automatic handgun (SN #CUW216US) in a holster under the driver's seat.

45.   On or about October 28, 2020, a state search warrant was served at BAILEY's residence on W. 78th Street in Los Angeles.  In the room that appeared to belong to BAILEY, law enforcement found CDCR identification in BAILEY's name.  In that same room, law enforcement also recovered a black face mask, and a pair of gray sweatpants with a tear on the right rear pocket which matched the pants worn by one of the suspects during the robberies at Party City and an earlier robbery at A.V. Jewelry, as referenced further below.

            6.   BAILEY Post-*Miranda* Statements

                  a. *BAILEY Admits to Participating in the Party*
                     *City Robbery*

46.   Following his arrest, on October 28, 2020, law enforcement interviewed BAILEY.  BAILEY waived his *Miranda* rights and the interview was audio recorded.  During the interview, BAILEY admitted the following:

            a.   BAILEY confirmed his telephone number as BAILEY's -7108 Number.  He also admitted to being the registered owner for the Nissan, which he identified from a photograph at the traffic stop.  He also stated that he had co-signed for a blue Honda Accord.

            b.   BAILEY admitted ownership of the Glock handgun which was recovered under the driver's seat of his Maxima at his arrest.  He identified the handgun from a photograph.

            c.   In reference to the Party City robbery, BAILEY identified himself from a surveillance video from Party City as the individual wearing the black hooded sweatshirt, gray

sweatpants with the torn pocket and duffle bag.  BAILEY admitted that he provided a .45 caliber handgun to a co-conspirator for use during the robbery.

      d.  While inside the Party City, BAILEY stated he had heard a firearm being shot.  He later fled out the back of the Party City.  He explained that he was afraid to exit through the broken front door because he did not know who shot out the glass.  He claims he was only given approximately $1,000 for his participation.

      e.  BAILEY admitted that he also participated in a 2020 robbery at Home Depot in Lancaster.  BAILEY identified himself from a security still from the Home Depot robbery as the individual wearing the white ear buds, glasses, long sleeve shirt, and dark cargo pants.  He admitted that he and a co-conspirator stole money from the Home Depot vault before fleeing out of the back of the store to a white van.  He claimed he was only was given approximately $1,000 for his participation in this robbery.

      f.  BAILEY was reluctant to discuss any robbery that occurred at A.V. Jewelry, though he did allude to his involvement in this robbery.[5]

---

[5] BAILEY stated A.L. was partially responsible for the robberies.  Following the interview, I located the individual I believe BAILEY was referring to.  However, the individual I located was 45 years old, 5-10 tall and 230 pounds, which did not match the physical description of the individual BAILEY claimed was A.L., nor did any phone or physical evidence point to A.L.'s involvement.  A.L. also did not appear to match any of the robbers on the surveillance footage.

7.   <u>BROWN's Arrest and Interview</u>

47.   A state arrest warrant was obtained for BROWN on November 20, 2020.  On December 2, 2020, BROWN was located and arrested during a traffic stop in Compton, California.

48.   On December 2, 2020, following his arrest, law enforcement interviewed BROWN.  BROWN waived his *Miranda* rights and the interview was audio recorded.  BROWN denied knowledge of the robbery at Party City.  He also denied knowing anyone named "Gilbert" (BAILEY) or "Kaleb" (K.W.).

8.   <u>Interstate Nexus</u>

49.   On January 15, 2021, I spoke with Angel Alaniz, the store manager of Party City located at 39451 10th Street West, Palmdale, Ca 93551.  She stated Party City is a national chain of retail stores with more than 800 locations throughout the United States.  Party City is owned by AAH Holdings Corporation and is headquartered in Rockaway, New Jersey.  Party City regularly accepts credit cards as tender for purchase transactions.  In addition, Party City obtains goods to be sold in its stores throughout the United States and other countries.

**B.   Other Suspected Robberies in the Robbery Series**

50.   During the course of the investigation, law enforcement identified other robberies that appeared to be committed by some of the same robbers as the Party City robbery detailed above.  Through the course of this broader investigation I interviewed victims, witnesses and suspects, collected and reviewed surveillance video, collected and

examined physical and DNA evidence, and reviewed cellular telephone data.  Based on this, I am aware of the following:

      1.   <u>The Robbery at A.V. Jewelry on July 23, 2019</u>

              *a.   The Robbery*

51.  On July 23, 2019 at approximately 12:01 p.m., an armed robbery occurred at A.V. Jewelry located at 2011 West Avenue J, Lancaster, California. Based on my review of the surveillance footage and investigation reports, interviews with witnesses, victims, and suspects, and collection of other evidence, I learned the following:

      a.   There appeared to be multiple cars used during the robbery.  These cars included a dark blue 2016-2017 Honda Accord used by the robbers, and a light blue Dodge Stratus with yellow paper plates, used by T.J. who held the door open for the robbers.  The driver of a tan Chrysler Concorde also appeared to be involved in the robbery based on how the car appears to loiter in the parking lot before and during the robbery, then follows the robbers' car after the robbery.

      b.   At approximately 11:52 a.m., a woman wearing a black, red, white and gray striped collared shirt got out of the Dodge Stratus and walked into A.V. Jewelry.  While inside the store, she had a bracelet steam cleaned by an employee.

      c.   At approximately 12:01 p.m., four masked robbers got out of a dark blue Honda Accord and rushed to enter A.V. Jewelry as the woman left A.V. Jewelry and appeared to hold the door open for the robbers, defeating the remote door lock.

d.   Once the robbers entered, two of the masked robbers brandished firearms at the customer and workers at the business, one of the suspects used a hammer to shatter the glass display tops while another suspect collected jewelry from the shattered displays.

e.   One robber also discovered a victim's firearm, stole it, and handed it to another robber who brandished the stolen firearm.

f.   At approximately 12:03 p.m., the four robbers left the store and got into the blue Honda Accord.  The Honda Accord and the tan Chrysler Concorde then drove through the parking lot and continued north on 20th Street West and out of view.

g.   An employee provided an estimated loss of $479,900 worth of jewelry pending a detailed inventory, $700 for the stolen firearm, and estimated the damage to the display cases at approximately $5,000.

*b.   Identification of Robbery Suspects*

52.   On August 5, 2019, LASD deputies conducted a traffic stop of a light blue Dodge Stratus with yellow paper plates. The deputies identified the driver as T.J.  T.J. provided a telephone number, which was documented on the citation, ("T.J.'s -6418 Number").

53.   I reviewed a DMV photograph of T.J. and a photograph of the vehicle she had been driving.  T.J. matched the appearance of the woman who appeared to hold the door open for the robbers.  In addition, this vehicle, the light blue Dodge

Stratus with yellow paper plates, is consistent with the vehicle used by the woman just prior to the robbery.

54.   Law enforcement obtained state search warrants for T.J.'s -6418 Number telephone records, including text message content.  The records indicate T.J.'s -6418 Number received, among other things, two text messages from a number ending in -3505 ("K.W.'s -3505 Number").  The messages were sent at approximately 10:36 a.m. on the morning of the robbery, and read, "Ain't no smokers around here?" and "I need one of them to take this chain[6] in there when they open."

55.   A subsequent state search warrant was authored for K.W.'s -3505 Number.  The records indicate the account was registered to K.W. and the device was using a cellular tower located at 2103 West Avenue J, Lancaster, California, in proximity to the robbery, on July 23, 2019 from 9:08 a.m. to 11:05 a.m., and from 11:42 a.m. to 12:06 p.m.[7]  I reviewed a DMV photograph of K.W.  The photograph matched the appearance of the man on surveillance videos who was seen getting out of the tan Chrysler Concorde that was present in the parking lot before and during the robberies.  The registered owner of the tan Chrysler Concorde, does not match the appearance of anyone believed to be involved in the robbery.

---

[6] Based on my training and experience, and discussions with other trained investigators, I know that a "chain" is sometimes used as slang for jewelry and could have been referring to the bracelet T.J. had cleaned at A.V. Jewelry.

[7] For the approximately 37 minutes between 11:05 a.m. and 11:42 a.m. the K.W. -3505 Number was mostly pinging off a tower 2 miles south-east of A.V. Jewelry.

56.   Additional state search warrants were obtained for historical cell records for telephone numbers in contact with K.W.'s -3505 Number around the time of robbery, which included, among others BAILEY's -7108 Number, and BROWN's -0492 Number.

57.   BAILEY's -7108 Number phone records indicate that on July 23, 2019 at 11:49 a.m. the device was using a cellular tower located at 2103 West Avenue J, Lancaster, in close proximity to the robbery.  Additionally, as mentioned above, DMV records indicate BAILEY is the registered owner of a blue Honda Accord, which matched the appearance of the car which the four masked robbers used.

58.   BROWN's -0492 Number phone records indicate that he traveled from south Los Angeles County, to Lancaster on July 22, 2019.  The device returned to south Los Angeles County on July 23, 2019 at approximately 3:33 p.m., a few hours after the robbery.  The device did not log any cellular tower activity during the robbery.  However, at approximately 11:45 a.m., approximately 16 minutes before the robbery, the phone was using a cellular tower at 43901 Division St., Lancaster, which is approximately 2.2 miles away from the scene of the robbery.

*c.   Interstate Nexus*

59.   On January 15, 2021, I spoke with Anita Manori, the owner of A.V. Jewelry.  She stated A.V. Jewelry regularly accepts credit cards as tender for purchase transactions.  A.V. Jewelry also obtains goods to be sold in its store from Georgia and Texas.

2.   Robbery at HOME DEPOT on May 3, 2020

a.   *The Robbery*

60.   On May 3, 2020, at approximately 3:01 p.m., an armed robbery occurred at Home Depot located at 44226 20th Street West, Lancaster, California.  Based on my review of law enforcement reports and surveillance video footage, I learned the following:

a.   At approximately 2:44 p.m. two suspects entered Home Depot.  One of the suspects (subsequently identified as BAILEY as described below) was wearing a black beanie, black face mask,[8] a white ear bud, glasses, dark long sleeve shirt, dark cargo pants, and black Nike shoes with white logo and sole.  The other suspect was wearing a black beanie, black face mask, black gloves, tan pants, and black work boots.

b.   At approximately 2:48 p.m. a man jogged toward a white Chrysler Pacifica in the parking lot, where he bent down and appeared to remove the license plates.  The man then drove the Pacifica into the rear alley of the adjacent business and backed it against the wall, which lead to the rear of the Home Depot.  As the Pacifica drove through the Home Depot parking lots, the vehicle's license plates were no longer present.

c.   At approximately 3:01 p.m., the two robbers contacted an employee near the vault room, one robber appeared to be holding a black object, which resembles a firearm.  The victim opened the vault and the two safes located inside.  The robbers collected money from the safes and fled.  Shortly

---

[8] Since the COVID-19 pandemic was ongoing at the time of the robbery, most of the people at Home Depot were wearing masks.

thereafter, the two robbers ran from the back of the store to an awaiting white Chrysler Pacifica, which fled the area.

        d.   The employee was unable to confirm if either suspect was holding a handgun.

        e.   According to Home Depot, the total money lost was approximately $6,828.

        b.   *Subsequent Investigation*

61.  LASD deputies, who responded to the robbery area immediately following the robbery, canvassed the area and located a white Apple Airpod in the rear of Home Depot where the robbers had fled.  The item matched the white Apple Airpod worn by one of the robbers during the robbery.  The Apple Airpod was submitted for DNA examination.  DNA examination determined that BAILEY's DNA was on the Apple Airpod.

62.  Home Depot provided a list of former employees, which included D.C., who was terminated on March 12, 2020 (approximately two months before the robbery) for job abandonment.  Notably, D.C. is the same employee identified above who appeared to wedge the door wider for the robbers in the Party City robbery described above.

63.  As mentioned above, BAILEY identified himself in a still image taken from the surveillance footage of the Home Depot robbery as the individual wearing the white ear buds, glasses, long sleeve shirt, and dark cargo pants.

64.  State search warrants were authored for BAILEY's -7108 Number, and K.W.'s -8118 Number, among others, who were in communication around the time of the robbery.

65.  BAILEY's -7108 Number's phone records indicate the device was using cellular towers located at 2103 West Avenue J, Lancaster, CA 93534, in proximity to the robbery, on May 3, 2020 at 2:40 p.m. and 1651 West Avenue K, Lancaster, California, in proximity to the robbery, on May 3, 2020 at 3:27 p.m.

66.  Phone records indicate that K.W.'s -8118 Number was using a cellular tower located at 2103 West Avenue J, Lancaster, California, in proximity to the robbery, on May 3, 2020 at 2:40 p.m.

c.  *Interstate Nexus*

67.  On January 15, 2021, I spoke with Ruben Banuelos, a Senior Organized Retail Crime Investigator with Home Depot.  He stated that Home Depot is a national chain of retail stores with 1,981 stores throughout the United States.  Home Depot is headquartered in Atlanta, Georgia.  Home Depot regularly accepts credit cards as tender for purchase transactions.  In addition, Home Depot obtains goods to be sold in its store throughout the United States and other countries.

## V. CONCLUSION

68.  For all the reasons described above, there is probable cause to believe that BAILEY, BROWN, and PEARSON violated of 18 U.S.C. § 1951(a) (Interference with Commerce by Robbery) and 18 U.S.C. §§ 924(c)(1)(i), (ii), (iii), 2(a) (Aiding and Abetting the Use and Carry of a Firearm During and In Relation to a Crime of Violence, Possession of a Firearm in Furtherance of a Crime of Violence, Brandishing a Firearm in Furtherance and During a Crime of Violence, and Discharging a Firearm in Furtherance and

22

During a Crime of Violence) for their conduct during the October

25, 2019 robbery at Party City in Palmdale, California.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 25th day of
January , 2021.

_Alicia G. Rosenberg_
_____
HONORABLE ALICIA G. ROSENBERG
UNITED STATES MAGISTRATE JUDGE